White , J.
I dissent from the principle of this decision. Its effect is to exonerate the lot-owners from all responsibility for the care and maintenance of the sewer, without regard to whether the city had or had not assumed such responsibility.
The general rule of law is that where the owner of land, without willfulness or negligence, uses his land in the ordinary manner of its use, though mischief should thereby be occasioned to his neighbor, he will not bo liable in damages. But if he brings upon his land anything which would not naturally come upon it, and which in itself is dangerous, and may become mischievous, if not kept under proper control, though in so doing he may act without personal willfulness or negligence, he will be liable in damages for any mischief thereby occasioned. Rylands et al. v. Fletcher, 3 Law Rep. (Eng. and Ir. App. Cas.) 830.
In the present case the lot-owners respectively, for the benefit of their several lots and to enhance their value, filled them up above the natural surface, leaving below a sti’ucture in the form of a sewer as a channel for the waters of Deer creek.
In principle, it could have made no difference whether this structure for the conveyance of the water had been built above or below the surface of the lots. It would in *651 either case have been on the premises of the lot-owner. Cujus est solum ejus est usque ad ccelum.
Possibly, from the history and nature of the work, the general liability of the lot-owners may have been so modified as only to require from each the exercise of reasonable care for the maintenance of the sewer on his own land. This was the view taken by the court below. But however this may be, I can discover no ground on which the lot-owners can be wholly exonerated from responsibility.
The work was intended by all the parties to be permanent., This is apparent from its nature and' the uses it was made to subserve. Care, supervision, and repairs were indispensable to its maintenance; and as the duty of maintaining the structure resulted from its original construction, it would seem but reasonable that this duty should rest on those respectively by whom and for whose benefit it was built.
If any one of the lot-owners had filled up bis lot and built the structure which was in fact built, independently and disconnected from any similar work on the adjacent lots, there could be no question but that he would be liable for any damage occasioned thereby. "While this liability, as between themselves, may be modified by the adjacent lot-owners uniting in extending the work upon their respective lots, yet, it seems to me, there is no ground upon which the extension of the work can. be held to operate as a discharge of the several lot-owners from all duty in respect to maintaining it.
Nor do I think the magnitude of the work, or of the risk consequent upon the failure of the lot-owners to keep the sewer in repair,' exonerates them from liability.
The same principle that would require the use of proper care and skill in the construction of the work, would continue to operate for its maintenance. And it may be remarked that while the lots have been greatly enhanced in value by the filling up of the valley and the substitution of the sewer for the original water-course, yet it appears from the testimony in the case, that if the break in the sewer on *652 the lot in question had been repaired in time, it could have been done at a comparatively small expense.
On the assumption that the sewer has not been adopted or accepted by the city as one of its public sewers, the effect of the decision seems to be that no one is responsible for its repair or maintenance.
As the decision of th'e court is placed solely on the ground of the non-liability of the lot-owners, the consideration of the other questions in the case becomes immaterial.
McIlvaine, C. J., concurred in the dissenting opinion.